IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KORTNI JOHNSON                    *

           Plaintiff        *

         vs.               *    CIVIL ACTION NO. MJG-15-237

POLICE OFFICER CASEY YONKERS      *

          Defendant        *

*       *       *       *       *       *       *       *       *

MEMORANDUM AND ORDER RE: DISMISSAL AND SUMMARY JUDGMENT

The Court has before it Defendant Casey Yonkers' Motion to Dismiss and for Summary Judgment [ECF No. 6] and the materials submitted relating thereto.  The Court finds a hearing unnecessary.

I.    BACKGROUND

In the Complaint[1] [ECF No. 1], Plaintiff Kortni Johnson ("Johnson") asserts claims against Defendant Police Officer Casey Yonkers ("Yonkers") for alleged violations of her constitutional rights in connection with a traffic stop that occurred on January 24, 2013.

---

[1]   Johnson refers to an "amended complaint" three times in her Response to the instant Motion.  However, Johnson has filed only the Complaint and Demand for Jury Trial, [ECF No. 1]; there is no amended complaint on the docket.

The parties present versions of the facts that are starkly different in various respects.  For present purposes, however, the Court must assume that Johnson's version is correct to the extent that there is evidence from which a reasonable jury could find those facts.

At approximately 8:43 AM on the morning of January 24, 2013, Yonkers was driving her Mazda minivan in the 500 block of Virginia Avenue in Hagerstown, Maryland.  The parties agree that Yonkers was driving over 40 miles per hour ("mph") in a 25 mph zone.[2]

Yonkers got into his patrol vehicle and began to follow Johnson to pull her over.  Yonkers activated his emergency lights and sirens, but Johnson continued to drive for several blocks.  Johnson initially was unaware of Yonkers' attempts to pull her over because she was playing music loudly.

When Johnson did pull over at 8:46 AM, Yonkers approached the minivan and shouted at Johnson to turn off the engine and give him the keys.  Yonkers yelled at Johnson that she was under arrest and reached into the minivan through the open window to take the keys.  He then opened the driver's side door and forcibly and roughly removed Johnson from the minivan using the

---

[2]    Yonkers contends that he was operating a handheld radar unit and clocked Johnson travelling at 46 mph. [ECF No. 6-1] at 3.  However, Johnson contends that "she may have been traveling 41 mph in a 25 mph zone." [ECF No. 7] at 3.

arm bar technique, slamming Johnson's head against the door frame in the process.

Yonkers handcuffed Johnson and placed her in the back of his patrol car.  Two additional police officers arrived on the scene and spoke with Johnson, who indicated that she wanted to make a complaint against Yonkers.[3]

At 9:10 AM, Yonkers issued Johnson two traffic citations for speeding and failure to pull over.  He released the handcuffs, and Johnson was free to leave.

As a result of the interaction with Yonkers, Johnson sustained injuries to her head and bruising to her shoulders, arms, and wrists.

Johnson pled guilty to the traffic citations on October 17, 2013.

By the instant Motion, "Yonkers moves to dismiss Johnson's Fourteenth Amendment claim and for summary judgment as to Johnson's Fourth Amendment claims," pursuant to Rule[4] 12(b)(6) and Rule 56, respectively, of the Federal Rules of Civil Procedure.  [ECF No. 6-1] at 1.

---

[3]    The parties agree that Lieutenant Chad Woodring was one of the officers who arrived on the scene.  However, Johnson contends that Yonkers misrepresented Woodring's identity and introduced Woodring as "Lieutenant William Wright." [ECF No. 7] at 4.

[4]    All "Rule" references herein are to the Federal Rules of Civil Procedure.

## II.   LEGAL STANDARDS

### A.   Dismissal

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint.  A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]."  Id.  A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Twombly, 550 U.S. at 557).  Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).

The Court shall consider herein, the adequacy of the Complaint.


B.   Summary Judgment

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

The Court finds the summary judgment motion premature.  It is perfectly obvious that there are genuine issues of material fact[5] with regard to Johnson's claims that survive dismissal. Therefore, the Court shall deny Yonkers summary judgment without prejudice to his renewal of the motion at a later stage of the case.

## III. DISCUSSION

### A.   Fourteenth Amendment Claims

The claims asserted in the Complaint arise out of allegations that Yonkers unjustifiably arrested and imprisoned Johnson and used excessive force against her during the traffic stop on January 24, 2013. Compl. ¶17.  Johnson contends that Yonkers' actions violated the rights guaranteed to her by the

---

[5]    In his Reply, Yonkers contends that Johnson's Affidavit, [ECF No. 7-1], is inadmissible because the Affidavit states that the "information herein is true to the best of [Johnson's] information, knowledge and belief," and presumably, therefore, cannot have been "made on personal knowledge" as required by Rule 56(c)(4). [ECF No. 9].  However, the substance of Johnson's affidavit indicate that the statements were based on her personal knowledge of the interactions she had with Yonkers and other police officers in connection with the January 24, 2013 traffic stop.  Accordingly, the Court will not strike Johnson's affidavit.  Cf. Klaus v. Hilb, Rogal & Hamilton Co. of Ohio, 437 F. Supp. 2d 706, 719 (S.D. Ohio 2006) ("While the Court agrees that much of Klaus's Supplemental Affidavit is argumentative in tone, there is no basis to strike most of the testimony because the Supplemental Affidavit is based on what Klaus personally saw, heard or did during her employment with BOA.").

Fourteenth Amendment to the United States Constitution, and,

therefore 42 U.S.C. § 1983.

The Supreme Court of the United States explained in Graham

v. Connor that:

> Where, as here, the excessive force claim
> arises in the context of an arrest or
> investigatory stop of a free citizen, it is
> most properly characterized as one invoking
> the protections of the Fourth Amendment,
> which guarantees citizens the right "to be
> secure in their persons . . . against
> unreasonable . . . seizures" of the person.

Graham v. Connor, 490 U.S. 386, 394 (1989) (alterations in

original).

In Graham, the Supreme Court held that:

> all claims that law enforcement officers
> have used excessive force—deadly or not—in
> the course of an arrest, investigatory stop,
> or other "seizure" of a free citizen should
> be analyzed under the Fourth Amendment and
> its "reasonableness" standard, rather than
> under a "substantive due process" approach
> [under the Fourteenth Amendment]. Because
> the Fourth Amendment provides an explicit
> textual source of constitutional protection
> against this sort of physically intrusive
> governmental conduct, that Amendment, not
> the more generalized notion of "substantive
> due process," must be the guide for
> analyzing these claims.

Id. at 395; see also Veney v. Ojeda, 321 F. Supp. 2d 733, 738-39

(E.D. Va. 2004) ("[P]laintiff claims that his constitutional

rights were violated when Officers Ojeda and Jones (i) initiated

the traffic stop, (ii) directed plaintiff to exit the vehicle,

(iii) attempted to conduct a pat-down search, (iv) exerted excessive force against plaintiff in effecting the arrest, and (v) falsely arrested plaintiff for obstruction of justice. Although plaintiff claims that these actions violated his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, these alleged constitutional violations need only be analyzed under the Fourth Amendment for it is clear that plaintiff cannot raise a due process claim under either the Fifth or Fourteenth Amendments.").

Accordingly, the Court will dismiss Johnson's Fourteenth Amendment claims.[6]

B.   <u>Claims Based on Legality of the Traffic Stop</u>

In the Complaint, Johnson appears to challenge the legality of the traffic stop, contending that Yonkers "unjustifiably arrested" and imprisoned her.  Compl. ¶ 17.

The Complaint asserts that Johnson was "detained at the police station."  Compl. ¶ 20.  However, in her Response to the instant Motion, Johnson acknowledges that she was handcuffed and placed into the back of Yonkers' patrol car, and that "[a]fter

---

[6]      "While an equal protection claim under the Fourteenth Amendment might exist under other circumstances, plaintiff has neither specifically raised nor pursued such a claim." (<u>Veney v. Ojeda</u>, 321 F. Supp. 2d 733, 739 n.4 (E.D. Va. 2004) (internal citation omitted).

issuing the [traffic] citations, Defendant released Plaintiff."
[ECF No. 7] at 4.   Therefore, all claims relating to any alleged
detention at the police station shall be dismissed.

"'[A] relatively brief encounter, a routine traffic stop is
more analogous to a so-called <u>Terry</u> stop . . . than to a formal
arrest.'"  <u>Rodriguez v. United States</u>, 135 S. Ct. 1609, 1614
(2015) (alterations in original) (citations and internal
quotation marks omitted).  The Supreme Court of the United
States has held "once a motor vehicle has been lawfully detained
for a traffic violation, the police officers may order the
driver to get out of the vehicle without violating the Fourth
Amendment's proscription of unreasonable searches and seizures."
<u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 111, 98 S. Ct. 330, 333, 54
L. Ed. 2d 331 (1977).  More recently, the Supreme Court has
stated that "[l]ike a <u>Terry</u> stop, the tolerable duration of
police inquiries in the traffic-stop context is determined by
the seizure's 'mission'—to address the traffic violation that
warranted the stop, and attend to related safety concerns."
<u>Rodriguez</u>, 135 S. Ct. at 1614.  Thus, "'[a] brief but complete
restriction of liberty is valid under <u>Terry</u>.'  In fact, <u>Terry</u>
stops customarily involve 'detentions where the person detained
is not technically free to leave while the officer pursues the
investigation.'"  <u>United States v. Leshuk</u>, 65 F.3d 1105, 1109
(4th Cir. 1995) (citations omitted).

Here, it is clear that Yonkers had probable cause to stop Johnson's vehicle after determining by radar that Johnson was exceeding the speed limit by at least sixteen miles per hour. See United States v. $206,323.56 More or Less, in U.S. Currency, 998 F. Supp. 693, 697 (S.D.W. Va. 1998).  The traffic stop was initiated at 8:46 AM and ended at 9:10 AM with Yonkers issuing the traffic citations and releasing Johnson.  [ECF No. 6-7] at 1.  There is no indication that Johnson unreasonably extended the traffic stop.  Cf. Rodriguez, 135 S. Ct. at 1612 ("[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures.").

Moreover, in her Response to the instant Motion, Johnson appears to have abandoned all claims based on the legality of the traffic stop, as she challenges only the methods and force that Yonkers used to remove her from the minivan.  See [ECF No. 7] at 6.

Accordingly, the Court shall dismiss all claims based on the legality of the traffic stop.


C.   Fourth Amendment Claims Based on Excessive Force

Johnson contends that Yonkers "used excessive force when he climbed through her car window and forcefully and violently extracted her from her vehicle." [ECF No. 7] at 6.

> A federal civil rights claim based upon
> § 1983 has two essential elements:
>
> "[A] plaintiff must allege the violation of
> a right secured by the Constitution and laws
> of the United States, and must show that the
> alleged deprivation was committed by a
> person acting under color of state law."

Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011)

(alteration in original) (quoting West v. Atkins, 487 U.S. 42,

48 (1988)).

As discussed supra, "an 'excessive force' claim against

police officers under 42 U.S.C. § 1983 is to be judged under

Fourth Amendment jurisprudence . . . ." Richardson v. McGriff,

762 A.2d 48, 56 (Md. 2000).  The excessive force inquiry

"focuses on the objective reasonableness of the officer's

conduct."[7]  Id.   "[T]he test of reasonableness 'is not capable

of precise definition or mechanical application,' [so] its

proper application 'requires careful attention to the facts and

circumstances of each particular case.'"  Id. (citation

omitted).  In Graham, the Supreme Court stated that:

> The "reasonableness" of a particular use of
> force must be judged from the perspective of
> a reasonable officer on the scene, rather

---

[7]   Johnson's reliance on the standards under the Eighth and
Fourteenth Amendments for analyzing excessive force claims
brought by pretrial detainees and prisoners is misplaced
because, as discussed supra, Johnson was not under arrest and
her claims are to be analyzed under the Fourth Amendment.
Moreover, Johnson does not even assert an Eighth Amendment claim
in the Complaint.

> than with the 20/20 vision of hindsight.
> . . . With respect to a claim of excessive
> force, the same standard of reasonableness
> at the moment applies: "Not every push or
> shove" . . . violates the Fourth Amendment.
> The calculus of reasonableness must embody
> allowance for the fact that police officers
> are often forced to make split-second
> judgments — in circumstances that are tense,
> uncertain, and rapidly evolving — about the
> amount of force that is necessary in a
> particular situation.

Graham v. Connor, 490 U.S. 386, 396-97 (1989) (citations

omitted).

In the Complaint, Johnson alleges that as a result of the

traffic stop, she was bruised and sustained injuries to her head

and that:

> Defendant Yonkers, without opening the door,
> then violently and forcefully reached into
> the vehicle by placing his upper body and
> arms through the window, climbed over
> Plaintiff Johnson, and grabbed Plaintiff
> Johnson's head and forcibly and maliciously
> held her head down while violently snatching
> the keys from Plaintiff Johnson's hand.
>
> [Defendant Yonkers] roughly pulled Plaintiff
> Johnson from her vehicle, and forcefully and
> violently handcuffed her. As Defendant
> Yonkers was forcefully, violently and
> maliciously dragging Plaintiff Johnson from
> her car, he struck Plaintiff's head against
> the vehicle's the door frame.

Compl. ¶¶ 13-14.

Yonkers contends that Johnson cannot prevail on the

excessive force claim because his actions were objectively

reasonable in light of the circumstances and that "at a minimum,

[he] is entitled to qualified immunity."  <u>See</u> [ECF No. 6-1] at

9-11.  The evidence may, of course, establish that Yonkers is

correct.  However, in the present dismissal context, the Court

finds that Johnson has alleged facts sufficient to present a

plausible excess force claim.


IV.  <u>CONCLUSION</u>

    For the foregoing reasons:

        1.   Defendant Casey Yonkers' Motion to Dismiss and
            for Summary Judgment [ECF No. 6] is GRANTED IN
            PART.

        2.   All claims brought pursuant to the Fourteenth
            Amendment to the United States Constitution are
            DISMISSED.

        3.   All claims relating to the legality of the
            traffic stop and regarding any detention at the
            police station are DISMISSED.

        4.   Plaintiff shall arrange a telephone conference to
            be held by August 31, 2015 to discuss the
            scheduling of further proceedings herein.


    SO ORDERED, on <u>Monday, August 10, 2015</u>.


                                          _____/s/_____
                                            Marvin J. Garbis
                                 United States District Judge